## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JIM GRAY,** | : | |
| **PLAINTIFF,** | : | |
| **VS.** | : | |
| | : | |
| **C.VAUGHN ADAMS (INDIVIDUAL** | : | |
| **CAPACITY),** | : | |
| **SHAWN WINSLOW (INDIVIDUAL** | : | |
| **CAPACITY),** | : | Case: 1:22−cv−03111  JURY DEMAND |
| **KALA SHARP (INDIVIDUAL CAPACITY),** | : | Assigned To : Unassigned |
| **MARION FOSTER (INDIVIDUAL** | : | Assign. Date : 10/13/2022 |
| **CAPACITY),** | : | Description: Employment Discrim. (H−DECK) |
| **J. BROWN (INDIVIDUAL CAPACITY),** | : | |
| **DISTRICT OF COLUMBIA, DEPARTMENT** | : | |
| **OF GENERAL SERVICES, and JOHN DOES** | : | |
| **1-10, INCLUSIVE,** | : | |
| **DEFENDANT.** | : | |

## COMPLAINT AT LAW AND IN EQUITY

AND NOW, comes the Plaintiff, Jim Gray, by and through himself, *pro se*, to file the instant

complaint and in support thereof avers as follows:

## INTRODUCTION

1. The Plaintiff initiates the instant action against the Defendants jointly and severally by way of

discrimination and unequal treatment on the basis of race and ethnicity in violation of Title VII

of The Civil Rights Act of 1964 as well as the engagement of false representation with the intent

to deceive by subjecting the Plaintiff to unequal treatment while the Plaintiff was employed and

also supplying false information regarding the Plaintiff while processing a subsequent disability

claim thereby giving rise to the instant matter.

**RECEIVED**

OCT 1 3 2022

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

2. As a direct and proximate result of the violations complained of in the instant matter, the Plaintiff has suffered damages including but not limited to economic and non-economic damages in an amount to be determined at trial.

3. The Plaintiff is seeking compensatory damages for the economic and noneconomic damages directly and proximately caused by the conduct of the Defendants herein including but not limited to back pay and front pay in addition to punitive damages as well as any and all other relief deemed necessary and applicable.

## JURISDICTION AND VENUE

4. This is a civil action authorized under 2 29 U.S.C. § 623 which prohibits age discrimination of race and ethnicity in the promotion, discharge, compensation, or terms and conditions or privileges of employment as well as.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), as Plaintiff and Defendant reside and conduct business in this district in which it is subject to the Court's personal jurisdiction, and pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this District.

## PARTIES

6. PLAINTIFF - is Jim Gray - Plaintiff in the instant action with an address of 9590 Muirkirk Road, Apartment T1, Laurel, MD 20708.

9. DEFENDANTS - District of Columbia, Department of General Services, Kala Sharp (Individual Capacity), Marion Foster (Individual Capacity), Joseph. Brown (Individual Capacity), Shawn Winslow (Individual Capacity), C. Vaughn Adams (Individual Capacity) and all other related individuals are the known Defendants in the instant matter with an address of 441 4th Street, N.W. Suite 800, Washington D.C. 20001.

10. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues those defendants by those fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

## STATEMENT OF FACTS

11. The Plaintiff initiates the instant action against the Defendants jointly and severally by way of discrimination and unequal treatment on the basis of race and ethnicity in violation of Title VII of The Civil Rights Act of 1964 as well as the engagement of false representation with the intent to deceive by subjecting the Plaintiff to unequal treatment while the Plaintiff was employed and also supplying false information regarding the Plaintiff while processing a subsequent disability claim thereby giving rise to the instant matter.

11. The Plaintiff alleges that the Department of General Services / Protective Services Division, with malicious intent and forethought, knowing supplied false and intentionally misleading information regarding federal investigations to the U.S. Department of Labor and U.S. Equal Employment Opportunity Commission as well as the U.S. Department of Veterans Affairs regarding the Plaintiff resulting in damages.

12. The Plaintiff also alleges that the Defendants divulged the Plaintiff's private medical information with malicious intent and forethought causing the Plaintiff embarrassment and emotional distress as well as reducing the Plaintiff's ability to seek other employment with the intent of causing the Plaintiff to resign due to the lack of grounds for termination.

13. The Plaintiff further alleges that the Defendants falsified and altered the Plaintiff's time sheets with malicious intent and forethought by placing the Plaintiff on two different leave statuses to deny the Plaintiff access to monies that the Plaintiff had earned and also to inflict financial and emotional distress by stopping benefits and eliciting a forced resignation.

3

14. Starting from the date of November 15, 2016 while employed at the Protective Services Division of the Department of General Services from the very first day, the Plaintiff became a target of then Sergeant M. Foster and Captain J. Brown each day and was reminded continuously that the Plaintiff was a term officer and could be fired at any time for any reason; the Plaintiff was publicly berated for having a disability and threatened for having a disability relating to the Plaintiff's military service; all of these actions were reported to supervisors.

15. The Plaintiff was isolated during training and not allowed to interact with other officers; the Plaintiff kept his head down because he needed the health benefits for his children and so he tolerated the unequal treatment as much as he could.

16. The Plaintiff visited his doctor on June 24, 2020, and provided the supervisor Lt. M. Harris a copy of the note; no change in duty status was implemented and the Plaintiff worked 11 8-hour shifts without issue.

17. On July 1, 2020, Sgt. Perry demanded the Plaintiff either work a roving post or go home without pay.

18. On July 13, 2020, the Plaintiff was informed by Kala Sharp that the Plaintiff was being removed from duty due to the Plaintiff's military service-related disabilities.

19. Sharp, Foster, Perry, and Captain Brown all conspired to find the Plaintiff unfit for duty without justification or cause.

20. The Plaintiff was initially hired and found fit for full duty with limitations by the Police and Fire Clinic as shown in Exhibit 1 attached hereto.

21. An email dated July 2, 2020, from Ms. Kala Sharp of DGSHR requesting medical documentation is attached herein as well which the Plaintiff provided for the second time; on July 13, 20220 the Plaintiff received an email from Ms. Sharp advising that it was her opinion

that the Plaintiff was unfit for duty and this was also affirmed by Ms. Sharp on August 12, 2020 and March 8, 2021; attached herein as Exhibit 2. (Note that no medical finding indicated that the Plaintiff was not fit for duty status).

22. An email dated September 29, 2021 from Ms. Wright of DGSHR requesting Return to Duty update due by October 15, 2021, with a time window of 16 days during a public health crisis; the VA provided finding by October 8, 2021, finding the Plaintiff fit for duty, but the Plaintiff was still not returned to duty; evidence of which is attached to the instant complaint as an exhibit identified as Exhibit 3.

23. An email dated March 8, 2021, from Kala Sharp of DGSHR shows the Plaintiff still not being returned to duty attached herein as Exhibit 4.

24. Ms. Sharp took punitive and retaliatory actions based on a perceived disability for an essential function that is not a part of the Plaintiff's job description as shown on Page 4 in the highlighted area identified as Exhibit 4A.

25. DGSHR / PSD had no authority to find the Plaintiff unfit for duty and this authority is the purview of DCHR that they also disregarded Fit for Duty request procedures included herein as Exhibit 4B.

26. The Defendants engaged in the making of a false statement to a federal investigator at the U.S. EEOC by stating that the Plaintiff could not perform the essential functions of the job; however, the functions stated in Ms. Sharps emails are not part of the Plaintiff's job description at DCHR (See Page 5 Highlighted Area Exhibit 5).

27. The Defendants also engaged in the making of a false statement to a federal investigator at the U.S. Department of Labor by stating that the Plaintiff could not perform the essential

function of the job; however, the function stated in Ms. Sharps emails are not a part of the

Plaintiff's job description at DCHR. (See Page 6 Highlighted Area Exhibit 6).

28. DGSHR Provided the Veterans Administration false information by stating that the Plaintiff

was on medical leave; but no doctor had ever placed the Plaintiff on duty status other than fit for

duty as shown in Exhibit 7 which further constitutes misrepresentation of material fact with the

intent to deceive.

29. DGSHR Ms. Sharp listed the Plaintiff as absent without leave at the same time; Ms. Wright

of DGSHR and C. Vaughn Adams DGS Senior Assistant Counsel was stating that the Plaintiff

was on protected leave without pay. This was done to stop unemployment benefits DGS / PSD

also provided false information to DOES stating that the Plaintiff was removed due to gross

misconduct as shown in Exhibit 8.

30. Ms. Sharp denied the Plaintiff for Paid Family Medical Leave which all D.C. Government

employees have a right to for self-care; this was done to inflict financial harm to the Plaintiff

(See Exhibit 9 - Page 2 - Line 21-22).

31. Ms. Sharp stated that the Plaintiff could only return to work if the Plaintiff had no work

restrictions even though the Plaintiff was hired with medical limitation due to military service

(See Exhibit 10).

32. DGSHR / PSD released the Plaintiff's medical certification to EEOC and DOL as well as

other parties unknown without the Plaintiff's consent (See DC St 1981 26-1304 attached herein

as Exhibit 11).

33. DGSHR / PSD engaged in coercion, threats of termination and unequal treatment by

renewing all other contract employees for a full (1) year term; the Plaintiff, on the other hand,

was being forced to take a (3) month extension and if the Plaintiff did not take the offer, then the Plaintiff would be terminated.

34. Based on the foregoing, the actions of the Defendants constitute complete disregard to the Plaintiff's medical condition resulting from military service as well as unequal treatment on the basis of disability as well as race in violation of state and federal law thereby giving rise to the instant complaint. Furthermore, the doctrine of qualified immunity does not apply in certain circumstances and situations such as this one as detailed in numerous sources of case law. Ordinarily, government officials are shielded from civil liability for damages through the doctrine of qualified immunity, unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A law is clearly established when the boundaries of the right are so clear such that a reasonable official would have known that his conduct violated that right. *Ashcroft v. Al-kidd*, 563 U.S. 731, 741 (2011). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Here, legal inferences must be made in favor of the Plaintiff and, when drawing all reasonable inferences in favor of the Plaintiff, there is plausibility to the Plaintiff's claims that the adverse action taken against them unequally violates the Plaintiff's constitutional rights and overrides the qualified immunity of the Plaintiff as conduct that a reasonable person knew or should have known violated 'clearly established statutory or constitutional rights' (regarding prohibition of discrimination and unequal treatment) thereby warranting denial of the motion to dismiss filed in the instant matter.

35. The Plaintiff filed a charge with the EEOC in April 2021 and has not received a right to sue letter as of the date of this filing; but the U.S. Supreme Court in *Fort Bend County,*

7

*Texas v. Davis*, 587 U.S. ___ (2019) (slip op., at 5) has stated that filing charges with the EEOC and receiving a right to sue letter is not a jurisdictional prerequisite to filing an action.

356. As a direct and proximate result of the violations complained of in the instant matter, the Plaintiff has suffered damages including but not limited to economic and non-economic damages in an amount to be determined at trial.

36. The Plaintiff is seeking compensatory damages for the economic and noneconomic damages directly and proximately caused by the conduct of the Defendants herein including but not limited to back pay and front pay in addition to punitive damages as well as any and all other relief deemed necessary and applicable.

<u>COUNT I</u>

<u>DISCRIMINATION ON BASIS OF DISABILITY IN VIOLATION OF ADA</u>

<u>FAILURE TO ACCOMMODATE</u>

37. The Plaintiff hereby references and incorporates Paragraphs 1 through 36 as though set forth herein at length.

38. The ADA, 42 U.S.C. §§ 12101 et seq., was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," id. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." Id. § 12101(b)(2). To that end, the statute "prohibits discrimination against persons with disabilities in three major areas of public life: employment, under Title I, 42 U.S.C. §§ 12111–12117; public services, under Title II, 42 U.S.C. §§ 12131-12165; and public accommodations, under Title III, 42 U.S.C. §§ 12182-12189." A Helping Hand, LLC v. Baltimore County, Md., 515 F.3d 356, 361 (4th Cir. 2008) (citing Tennessee v. Lane, 541 U.S. 509, 516-17 (2004)).

39. The ADA contains five titles: Title I, Employment; Title II, Public Services; Title III, Public Accommodations; Title IV, Telecommunications; and Title V, Miscellaneous Provisions. Of relevance here, Title I prohibits employment discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). See Summers v. Altarum Inst., Corp., 740 F.3d 325, 328 (4th Cir. 2014) ("The ADA makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'").

40. A "qualified individual" is defined in the ADA as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" Id. § 12102(1); see Gentry v. E. W. Partners Club Mgmt. Co., 816 F.3d 228, 239 (4th Cir. 2016) (quoting 29 C.F.R. § 1630.2(k)(1)). Major life activities include, but are not limited to, "sleeping, walking, standing, lifting, bending . . . working" and "reproductive functions." 42 U.S.C. §12102(2)(A)-(B). An individual with a "a record of such an impairment," or who is "regarded as having such an impairment," will be considered to have a disability. Id. § 12102(1)(B)-(C).

41. Under Title I of the ADA, the term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer.]" Id. §12112(b)(5)(A); see Wilson v. Dollar Gen. Corp., 717 F.3d 337, 344 (4th Cir. 2013).8

Additionally, "discrimination against a qualified individual on the basis of disability" includes "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(B). And, the ADA bars the discharge of a qualified employee because he is disabled. Summers, 740 F.3d at 328.

42. As noted, "[o]ne form of discrimination prohibited by the ADA is a failure to make a reasonable accommodation." Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 F. App'x 314, 311 (4th Cir. 2011). "A reasonable accommodation is one that (1) 'enables [a qualified] individual with a disability . . . to perform the essential functions of [a] position,' 29 C.F.R. § 1630.2(o)(1)(ii); or (2) 'enable[s] [an] employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by . . . other similarly situated employees without disabilities,' id. § 1630.2(o)(1)(iii)." Hamel v. Bd. of Educ. of Harford Cty., JKB-16-2876, 2018 WL 1453335, at *10 (D. Md. Mar. 23, 2018)

43. In the instant matter, the Plaintiff is a qualified individual as defined under Title I of the ADA.

44. The Defendant's in the instant matter engaged in unequal treatment on the basis of this disability in numerous regards including but not limited to the failure to accommodate as well as wrongful discharge.

45. To establish a prima facie case for failure to accommodate, the EEOC must show: (1) the employee was an individual with a disability within the meaning of the ADA; (2) the employer had notice of the disability; (3) with reasonable accommodation, the employee could perform the essential functions of the position; and (4) the employer refused to make such accommodations. Rhoads v. FDIC, 257 F.3d 373, 387 n.11 (4th Cir. 2001); see also Stephenson v. Pfizer, 641 F.

App'x 214, 219 (4th Cir. 2016) (per curiam); Jacobs, 780 F.3d at 579; Wilson v. Dollar Gen.

Corp., 717 F.3d at 345.

46. As discussed, infra, an employee need not demonstrate that the employer had a

discriminatory intent. Notably, "at the summary judgment stage, the employee 'need only show

that an accommodation seems reasonable on its face,' and then the employer 'must show special

(typically case-specific) circumstances that demonstrate undue hardship.'" Reyazuddin, 789 F.3d

at 414 (some quotations and citation omitted); see US Airways, Inc. v. Barnett, 535 U.S. 391,

401- 02 (2002). If the employee cannot show the accommodation is reasonable "in the run of

cases," summary judgment against the plaintiff typically follows. However, the plaintiff may still

"show that special circumstances warrant a finding that . . . the requested 'accommodation' is

'reasonable' on the particular facts." Barnett, 535 U.S. at 405.

47. A reasonable accommodation "may include . . . job restructuring, part-time or modified work

schedules, reassignment to a vacant position, acquisition or modification of equipment or

devices, appropriate adjustment or modifications of examinations, training materials or policies,

the provision of qualified readers or interpreters, and other similar accommodations for

individuals with disabilities." 42 U.S.C. § 12111(9) (emphasis added). A reasonable

accommodation may also include accrued paid leave or unpaid leave. See 29 C.F.R. pt. 1630

app. § 1630.2(o) ("[O]ther accommodations could include . . . permitting the use of accrued paid

leave or providing additional unpaid leave for necessary treatment[.]").

48. In the instant matter, the Plaintiff didn't even require reasonable accommodation; the

Plaintiff merely required being treated equally according to the terms and conditions that they

accepted at the initial time of employment.

49. However, the Defendants breached their duties and obligations to the Plaintiff with regards to disability accommodation when they began modifying the terms and conditions of employment after the Plaintiff has been adequately performing throughout several years of employment and also with the misrepresentation of the Plaintiff's status and fitness for employment contrary to what was agreed to at the acceptance of employment as described in the statement of facts herein.

50. The Plaintiff merely required, as he was entitled, to simply being permitted to perform the regular duties of employment without harassment and / or modification as described herein which was not provided by the Defendants thereby constituting unequal treatment against the Plaintiff in violation of the ADA.

51. Based on the foregoing, the actions of the Defendants constitute complete disregard to the Plaintiff's medical condition resulting from military service as well as unequal treatment on the basis of disability as well as race in violation of state and federal law thereby giving rise to the instant complaint.

52. As a direct and proximate result of the violations complained of in the instant matter, the Plaintiff has suffered damages including but not limited to economic and non-economic damages in an amount to be determined at trial.

53. The Plaintiff is seeking compensatory damages for the economic and noneconomic damages directly and proximately caused by the conduct of the Defendants herein including but not limited to back pay and front pay in addition to punitive damages as well as any and all other relief deemed necessary and applicable.

## COUNT II

## DISCRIMINATION ON BASIS OF DISABILITY IN VIOLATION OF ADA

## UNLAWFUL DISCHARGE

54. The Plaintiff hereby references and incorporates Paragraphs 1 through 36 as though set forth herein at length.

55. To establish a prime facie claim of wrongful discharge, the plaintiff is generally required to show that (1) the employee is a qualified individual with a disability; (2) the employee was discharged; (3) at the time of discharge, the employee was performing the job at a level that met the employer's legitimate expectations; and (4) the discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. Coursey v. Univ. of Md. E. Shore, 577 F. App'x 167, 174 (4th Cir. 2014) (citing Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001)); see also Summers, 740 F.3d at 328; Harris v. Reston Hosp. Ctr., LLC, 523 F. App'x 938, 947 (4th Cir. 2013) (per curiam); Martinson v. Kinney Shoe Corp., 104 F.3d 683, 686 (4th Cir. 1997); Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995).

56.  In some Fourth Circuit cases, the prima facie case under the ADA has been formulated as follows: "(1) [Plaintiff] 'was a qualified individual with a disability'; (2) he 'was discharged'; (3) he 'was fulfilling h[is] employer's legitimate expectations at the time of discharge'; and (4) 'the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination.'" Reynolds v. Am. Nat. Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (citation omitted). This formulation is consistent with Gecewicz v. Henry Ford Macon's Hosp. Corp., 683 F.3d 316, 321 (6th Cir. 2012). However, the Gecewicz formulation expands the fourth element into separate (and more specific) fourth and fifth elements, so as to specify how "'the circumstances of

[plaintiff's] discharge raise a reasonable inference of unlawful discrimination,'" id., which is helpful to a court that must apply the standard.

57. In the instant matter, no inference is needed to establish the connection between the Plaintiff's unlawful discharge to the disability; the evidenced misconduct show in the communications between the Defendants and the Plaintiff shows the relevance of the Plaintiff's disability status to the decision making that took place in the instant matter.

58. When alleging wrongful discharge, the plaintiff bears the burden of proving his claim by a preponderance of the evidence. In general, there are "two avenues of proof" at trial by which a plaintiff may prove intentional employment discrimination. Thomas v. Delmarva Power & Light Co., 715 F. App'x 301, 302 (4th Cir. 2018) (per curiam) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013)).

59. The first avenue of proof is to offer "direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." Rhoads, 257 F.3d at 391; see Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), cert. denied, 520 U.S. 1116 (1997). A plaintiff who "demonstrates that his or her disability played a motivating role in the employment decision" is "entitled to relief." Baird v. Rose, 192 F.3d 462, 470 (4th Cir.1999). "'What is required is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" Rhoads, 257 F.3d at 391-92 (quoting Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir.1999)) (internal citation omitted).

60. The second avenue of proof available to the plaintiff is to follow the burden-shifting approach first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S.

14

792 (1973). See Guessous v. Fairview Prop. Inv., LLC, 828 F.3d 208, 216 (4th Cir. 2016)

(discussing the three steps of the McDonnell Douglas framework).14 Notably, "the McDonnell

Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination." Trans

World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985).

61. Here, the Plaintiff has presented direct evidence of discrimination and unequal treatment on

the basis of disability thereby warranting the first avenue of proof which has been provided.

62. Based on the foregoing, the actions of the Defendants constitute complete disregard to the

Plaintiff's medical condition resulting from military service as well as unequal treatment on the

basis of disability as well as race in violation of state and federal law thereby giving rise to the

instant complaint.

63. As a direct and proximate result of the violations complained of in the instant matter, the

Plaintiff has suffered damages including but not limited to economic and non-economic damages

in an amount to be determined at trial.

64. The Plaintiff is seeking compensatory damages for the economic and noneconomic damages

directly and proximately caused by the conduct of the Defendants herein including but not

limited to back pay and front pay in addition to punitive damages as well as any and all other

relief deemed necessary and applicable.

## COUNT III

## FRAUDULENT MISREPRESENTATION

65. The Plaintiff hereby references and incorporates Paragraphs 1 through 36 as though set forth

herein at length.

66. In the District of Columbia, the elements of fraudulent misrepresentation are: "(1) a false

representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with

the intent to deceive, and (5) action is taken in reliance upon the representation." Atraqchi v.

GUMC Unified Billing Servs., 788 A.2d 559, 563 (D.C. 2002) (quoting Bennett v. Kiggins, 377

A.2d 57, 59 (D.C. 1977).

67. In the instant matter, the Defendants engaged in numerous misrepresentations of material fact

regarding the Plaintiff's employment status and circumstances with full knowledge and

awareness of the falsity thereof in order to deprive the Plaintiff of entitlements and benefits that

he was rightfully entitled to throughout the course of employment including disability and

unemployment benefits thereby resulting in damages to the Plaintiff as described in detail in the

Statement of Facts and exhibits attached to the instant complaint.

68. As a direct and proximate result of the violations complained of in the instant matter, the

Plaintiff has suffered damages including but not limited to economic and non-economic damages

in an amount to be determined at trial.

69. The Plaintiff is seeking compensatory damages for the economic and noneconomic damages

directly and proximately caused by the conduct of the Defendants herein including but not

limited to back pay and front pay in addition to punitive damages as well as any and all other

relief deemed necessary and applicable.

## COUNT IV

## RETALIATION

70. The Plaintiff hereby references and incorporates Paragraphs 1 through 36 as though set forth

herein at length.

71. Title VII bars retaliation based on an employee's opposition to conduct made unlawful by

Title VII, or for participation in a Title VII investigation or proceeding. 42 U.S.C. § 2000e–3; see

e.g., Evans v. Int'l Paper Co., 936 F.3d 196, 213 (4th Cir. 2019); Ray v. Int'l Paper Co., 909 F.3d

661, 666 (4th Cir. 2018); Netter v. Barnes, 908 F.3d 932, 937 (4th Cir. 2018); Strothers v. City of

Laurel, 895 F. 3d 317, 326-27 (4th Cir. 2018); DeMasters v. Carilion Clinic, 796 F.3d 409, 416

(4th Cir. 2015); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 298 (4th Cir. 2015) (en

banc); Freeman v. Dal-Tile Corp., 750 F.3d 413, 420 (4th Cir. 2014).

72. A plaintiff may prove retaliation either through offering direct or indirect evidence, or

through the McDonnell Douglas burden-shifting framework. See, e.g., Strothers, 895 F.3d at 327

(citing Foster v. Univ. of Md.–E. Shore, 787 F.3d 243, 249 (4th Cir. 2015); S.B. ex rel. A.L., 819

F.3d at 78; Rhoads, 257 F.3d at 391.

73. A hostile environment exists "[w]hen the workplace is permeated with 'discriminatory

intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of

the victim's employment[.]'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citations

omitted). The Fourth Circuit has recognized that a claim of retaliatory hostile work environment

is a distinct cause of action. See Von Gunten v. Maryland, 243 F.3d 858, 869 (4th Cir. 2001)

("Retaliatory harassment can constitute adverse employment action . . . ."), overruled on other

grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006); Thorn v.

Sebelius, 766 F. Supp. 2d 585, 600 (D. Md. 2011), aff'd, 465 F. App'x 274 (4th Cir. 2012); see

also Gowski v. Peake, 682 F.3d 1299, 1311 (11th Cir. 2012) (collecting circuit decisions)

61. To establish a claim of retaliatory hostile work environment, a plaintiff must show that "'(1)

[s]he experienced unwelcome harassment; (2) the harassment was [in retaliation for protected

conduct]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his

employment and to create an abusive atmosphere; and (4) there is some basis for imposing

liability on the employer.'" Wells v. Gates, 336 F. App'x 378, 387 (4th Cir. 2009) (first

alteration by this Court, second alteration in Wells) (quoting Baqir v. Principi, 434 F.3d 733,

745-46 (4th Cir. 2006)); see Pueschel v. Peters, 577 F.3d 558, 564-65 (4th Cir. 2009); Goldstein

v. Univ. of Md., CCB-18-2376, 2019 WL 4467035, at *10 (D. Md. Sept. 17, 2019); Clarke v.

DynCorp Int'l LLC, 962 F. Supp. 2d 781, 790-91 (D. Md. 2013); Thorton, 766 F. Supp. 2d 585,

600 (D. Md. 2011).

74. The first element, unwelcome conduct, "is not a high hurdle." Strothers, 895 F.3d at 328. The

Fourth Circuit has explained that "an employee can demonstrate that certain conduct is

unwelcome simply by voicing [his] objection . . . ." Id. at 328-29. Moreover, "the nature of the

conduct may indicate whether or not the conduct is unwelcome." Id. at 329.

75. To satisfy the second element, "the employer must have taken the adverse employment

action because the plaintiff engaged in a protected activity." Dowe v. Total Action Against

Poverty, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original); see also Perkins v. Int'l Paper

Co., 936 F.3d 196, 214 (4th Cir. 2019). Title VII ultimately requires the plaintiff to show that the

"protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of

Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013). However, "[a]t the prima facie stage, a

plaintiff does not have to show that 'their protected activities were but-for causes of the adverse

action.'" Perkins, 936 F.3d at 214 (quoting Strothers, 895 F.3d at 335). Nevertheless, the plaintiff

must still make "some showing" of causation, such as demonstrating that the "'employer either

understood or should have understood the employee to be engaged in protected activity'" and

that "'the employer took adverse action against the employee soon after becoming aware of such

activity.'" Perkins, 936 F.3d at 214 (quoting Strothers, 895 F.3d at 335).

76. As to the third element, a hostile work environment exists under Title VII when the

"'workplace [is] permeated with discriminatory intimidation, ridicule, and insult . . . .'"

BoyerLiberto, 786 F.3d at 281 (some quotations and citation omitted) (quoting Jordan v.

*Alternative Resources Corp.*, 458 F.3d 332, 339 (4th Cir. 2006)); *see Harris*, 510 U.S. at 21;

*Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 158 (4th Cir. 2018). The plaintiff must

allege that "the environment would reasonably be perceived, and is perceived, as hostile or

abusive." *BoyerLiberto*, 786 F.3d at 277 (citing *Harris*, 510 U.S. at 22).

77. The "severe or pervasive" requirement has both subjective and objective components. *Harris*,

510 U.S. at 21-22; *see EEOC v. Cent. Wholesalers Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). Thus,

"[w]hether the environment is objectively hostile or abusive is 'judged from the perspective of a

reasonable person in the plaintiff's position.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Oncale v.

Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)); *see Irani*, 767 F. App'x at 416;

*Nnadozie*, 730 F. App'x at 158. However, the plaintiff does not need to demonstrate that the

work environment is "psychologically injurious." *Id.*; *see Harris*, 510 U.S. at 21-22

78. Here, the Plaintiff attempted to prevent the unequal treatment on the basis of disability taking

place which prompted the retaliation of the Defendants in the form of preventing the Plaintiff to

access various benefits and entitlements throughout the course of employment including equal

treatment in contract renewal as well as being able to obtain disability and unemployment relief

thereby giving rise to the instant claim.

## COUNT V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

79. The Plaintiff hereby references and incorporates Paragraphs 1 through 36 as though set forth

herein at length.

80. "To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must

show '(1) extreme and outrageous conduct on the part of the defendant [], which (2) intentionally

or recklessly (3) causes the plaintiff severe emotional distress.'" *Competitive Enterprise Institute*

v. Mann, 150 A.3d 1213, 1260 (D.C. 2016) (quoting Williams v. Dist. of Columbia, 9 A.3d 484,

493–94 (D.C. 2010)). The alleged conduct must be "so outrageous in character, and so extreme

in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized community." Williams, 9 A.3d at 494 (quoting Bernstein v.

Fernandez, 649 A.2d 1064, 1075 (D.C. 1991)).

81. In the instant matter, the Defendants have engaged in extreme and outrageous conduct with

regards to their treatment of the Plaintiff intentionally with malicious aforethought and

specifically to cause the Plaintiff as much distress as possible.

82. The conduct described herein is outrageous and extreme in its lack of consideration for a

military veteran with a moderate disability exceeding all bounds of decency and utterly atrocious

as well as intolerable in a civilized community; particularly the United States of America.

83. As a direct and proximate result of the violations complained of in the instant matter, the

Plaintiff has suffered damages including but not limited to economic and non-economic damages

in an amount to be determined at trial.

84. The Plaintiff is seeking compensatory damages for the economic and noneconomic damages

directly and proximately caused by the conduct of the Defendants herein including but not

limited to back pay and front pay in addition to punitive damages as well as any and all other

relief deemed necessary and applicable.


## JURY TRIAL DEMANDED

85. The Plaintiff hereby demands a trial by jury with regards to any and all facts disputed herein.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, the Plaintiff seeks that this Honorable Court enter a

judgment against the Defendants as follows:

      A) COMPENSATORY DAMAGES in an amount not less than $300,000 to be

      determined in a trial by jury

      B) PUNITIVE DAMAGES in an amount to be determined in a trial by jury

      C) COSTS AND FEES associated with litigating the instant matter

      D) ANY AND ALL OTHER RELIEF DEEMED NECESSARY AND APPLICABLE

DATED: September 19, 2022,                Respectfully Submitted,